**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* C.C.

**No. 21-0071** (Kanawha County 20-JA-244)

**MEMORANDUM DECISION**

Petitioner Mother A.S., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's December 29, 2020, order terminating her parental rights to C.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, J. Rudy Martin, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without granting her an improvement period and without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2020, the DHHR filed an abuse and neglect petition alleging that petitioner's substance abuse negatively impacted her ability to parent infant C.C. The DHHR also alleged that Child Protective Services ("CPS") workers and law enforcement officers were called to the home on numerous occasions due to domestic disturbances wherein petitioner was the aggressor. Law enforcement officers told petitioner and the father that the child could not be left alone with petitioner. On several occasions, the CPS workers observed petitioner to be under the influence of drugs with dilated pupils, slurred and disrupted speech, and erratic behavior. The father was deemed nonabusing, and the child remained in his care. Furthermore, the DHHR alleged that

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

petitioner had recently completed services in a prior CPS case, and the child was returned to her care.

At the preliminary hearing held in June of 2020, the CPS worker testified that petitioner's prior CPS case had closed only eleven days before the DHHR received another referral regarding petitioner in May of 2020. The worker explained that the prior case was opened after C.C. was born drug-exposed in December of 2019. The worker stated that there were numerous domestic disturbances at the home caused by petitioner's erratic and violent behavior against the father. Petitioner had apparently relapsed and was acting out of control, including threatening to kill the father. Petitioner denied illicit drug use to the worker. The circuit court noted that petitioner appeared groggy and under the influence of drugs during the hearing. Having heard the evidence, the circuit court ratified the removal of the child and also ordered the DHHR to provide petitioner parenting and adult life skills services as well as supervised visitations contingent upon petitioner's clean drug screen results.

The circuit court held an adjudicatory hearing in August of 2020. Petitioner failed to appear, but counsel represented her. The DHHR presented evidence consistent with the petition. The circuit court found that petitioner relapsed shortly after the provision of services from her prior CPS case and adjudicated her as an abusing parent. In September of 2020, petitioner filed a motion for a post-adjudicatory improvement period.

By October of 2020, the DHHR submitted a court summary indicating that petitioner had not been compliant with drug screening or other services, such as parenting and adult life skills classes. At a status hearing the same month, petitioner failed to appear, but was represented by counsel. The DHHR requested the termination of petitioner's parental rights due to her noncompliance with services. In November of 2020, the DHHR filed another updated court summary stating that petitioner remained noncompliant and that her whereabouts were unknown. At another status hearing held the same month, petitioner failed to appear, but counsel represented her. The circuit court set the matter for disposition but ordered the parties to convene for a multidisciplinary team ("MDT") meeting prior to the dispositional hearing to allow petitioner a final chance to participate in the proceedings. However, petitioner failed to appear for the MDT, and the DHHR and guardian agreed to request the termination of petitioner's parental rights.

In December of 2020, the circuit court held a dispositional hearing. Petitioner appeared, in person and by counsel. A CPS worker testified that the DHHR recommended termination of petitioner's parental rights as she had not complied with services and failed to stay in contact with the service provider or DHHR worker. Petitioner moved for a post-adjudicatory improvement period. She testified that although she had not cooperated with the DHHR or participated in services for the majority of the proceedings, she had enrolled in a drug detoxification program and a medication assisted treatment program nearly two months prior. She also stated that she had had a recovery coach for the previous two weeks who was helping her obtain housing and employment. The circuit court denied the motion, finding that petitioner had not submitted to a single drug screen despite the screens being court ordered and that petitioner had absented herself from the proceedings as her last appearance was in June of 2020. The circuit court also found that petitioner had done "absolutely nothing to avail herself of the services ordered by this [c]ourt despite the service provider's efforts to locate her." The circuit court also noted that petitioner had received

services from the DHHR essentially since C.C.'s birth yet had not addressed her drug abuse. Based on the evidence presented, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination was necessary for the child's welfare. The circuit court terminated petitioner's parental rights by its order entered on December 29, 2020. Petitioner appeals the dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. Petitioner testified at the dispositional hearing that she had completed a drug detoxication program, was currently enrolled in a medication assisted treatment program, and had a recovery coach who was helping her obtain employment and housing. Petitioner asserts that she was never given the opportunity to show the circuit court that she could properly parent her child.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

We find that petitioner failed to demonstrate that she was likely to fully participate in an improvement period. While petitioner contends that she made some positive changes a month prior to disposition, petitioner fails to address her glaring absence during most of the proceedings and

---

[2]The father was deemed a nonabusing parent below, and the permanency plan for the child is to remain in his care.

complete failure to formulate and participate in a family case plan. In her brief, petitioner concedes that she was absent since June of 2020 and failed to participate in the DHHR's services, including random drug screening. At the preliminary hearing, the DHHR was ordered to provide petitioner with adult life skills and parenting classes as well as supervised visitations contingent upon negative drug screens. As petitioner never submitted to any random drug screenings, she never exercised visitations with C.C., a fact that supports the circuit court's denial of her improvement period and termination of her parental rights. *See In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) ("[T]he level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently . . . ."). Petitioner clearly chose not to participate in proceedings designed to reunify the family, failed to avail herself of services offered by the DHHR to help her correct the conditions of abuse and neglect, and failed to coordinate with the DHHR with any drug treatment by the dispositional phase of the case. In light of the overwhelming evidence that petitioner was unlikely to participate in the terms and conditions of an improvement period, we find no error.

Next, petitioner argues that the circuit court erred in terminating her parental rights rather than employing a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(c)(5). According to petitioner, the circuit court should have placed C.C. with the father and dismissed the petition against her. Petitioner avers that this disposition would have allowed her time to correct her issues and modify custody at a later date.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

As outlined above, the evidence overwhelmingly shows that petitioner failed to respond to or follow through with a reasonable family case plan. Although petitioner claims that she completed drug detoxification a month prior to the dispositional hearing, she fails to explain her complete absence from all hearings and MDT meetings since June of 2020. She further fails to explain why she did not stay in contact with her service provider or DHHR worker when she was made aware that her parental rights could be terminated. Petitioner completely failed to participate in any aspect of the DHHR's services and failed to participate in formulating a case plan to address her drug addiction. Furthermore, the evidence supports the termination of petitioner's parental rights as necessary for the child's welfare as she had not visited with the child during the pendency of the case and had not corrected the conditions of abuse and neglect. As such, it is clear that there

was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and the child's welfare required termination of petitioner's parental rights.

Finally, regarding petitioner's argument that her parental rights should have remained intact since the child was reunified with the father, we have previously held that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id*. Here, there was substantial evidence that petitioner was unlikely to improve and correct the conditions of abuse and neglect. Insomuch as petitioner argues that the circuit court should have implemented a less-restrictive disposition such as dismissal to allow her an opportunity to demonstrate that she could correct the conditions of abuse, we have previously held the following:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 29, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton